Good afternoon everybody. Good afternoon your honor. Good afternoon. We're here on case number 20-3163, 21-1288 and 21-2196 Legends Creek Homeowners Association versus Travelers Indemnity Company. We're hearing oral argument today. We'll understand you have reserved five minutes of rebuttal time, is that correct? Yes your honor. Just a reminder it's a running clock so you'll have to keep track when it gets to five and then after we hear from Mr. Byers we'll hear from Mr. Orlando. So Mr. Byers you may proceed. Thank you your honor. May it please the court I represent Legends Creek Homeowners Association in this matter along with co-counsel David Miller. For the purposes of oral argument today I'm going to address the issue before the court as to whether a factual dispute exists to support waiver of the one sentence suit limitation clause in this 156 page policy. Under Indiana law as discussed in Huff and Schaefer the limitations easily waived based upon slight acts from the insurance company and there are circumstances in this case that support waiver. The four broad categories that by the insurance company of waiver I've categorized as delay circumstances, negotiations, inducement, and strict compliance with other terms of the policy. I'm going to go through an oral argument each of these categories with the court as matched up by the facts. We also did file and I'll let the court read in the briefs that the policy contractual limitation period is the four categories under the totality of circumstances this court should reverse the district courts determination because there is an issue of fact is the waiver here and looking at delay the the claim started in September of 16 the data loss was May 1st but the claim started in September 16. Travelers initially and this is key travelers initially paid to only replace the roof soft metals and repair the north-facing sides. The reason that that's important is because for the north-facing siding that was really the bulk of the remainder of this claim. Now that was in November in January the public adjuster emails the travelers adjuster and says in January of 17 which is only two months later that the spot repair to the north-facing sides is not acceptable. Thereafter for a period of seven months travelers considers that request and eventually grants removal and replacement of the north-facing sides in October. So there's a seven month delay and then estimates as to the cost of that repair are exchanged for an additional four and a half months. Excuse me those estimates were always from just the one side right? Yes it yes that's that's correct judge in in travelers eventually agreed with the public adjusters estimate and waited until February to do so a delay of four and a half months in agreeing with the public adjusters estimate travelers adjuster acknowledges that the delay was on travelers part and apologizes for it and that's in that's in an email from the travelers adjuster. Then after that after we have a nearly near nearly a year delay on replacement and facing sides in February there's an email of course from the public adjuster to the homeowners association indicating that the north-facing sites will be a gross mismatch and essentially that it's difficult for insurance to get the insurance company to pay for the remainder of the siding the other three damaged by hail. But he indicated it was possible he did say it was going to be a bit of a game of chess he said somewhat a game of chess in the in the district court I think clearly as a matter of law the district court erred because she took this email as the public adjuster having an ulterior motive in the claim and that's not true at all when you read that email all he's saying he's not trying to work up a bad faith case but all he's saying is that he's trying to get maximum policy benefits and he doesn't want to stick the homeowners association with at the same time getting the north-facing sides replaced but there being a gross mismatch. So Mr. Byers is is it is there a certain facts that you're asking us to rely upon and particularly did you think gave the homeowners association the impression that travelers didn't intend to enforce that suit limitation provision? Yes your honor the first fact is under the delay category there was an 11 and a half there was a nearly year delay in addressing this north-facing sides issue the district court counterbalanced that delay against which what the district court judge blamed on as a two-month delay from the policy holder in presenting this new claim and my point is if travelers wouldn't have delayed it for 11 months it would have been a address much earlier so the district court decision says basically that we brought this part of the claim up too late too close to the suit limitation clause only basically three weeks from when the anniversary ran. My point is had there not been a year delay in addressing the issue on travelers and it would have been brought up much sooner. I'm not sure I see the connection Mr. between the timeline for payment on certain estimates and why the homeowners association somehow believes that travelers is not going to enforce the limitation of actions. That comes through in addition to the delay which is a circumstance that comes through in the negotiations as well so in looking at the negotiations leading up to the suit limitation period travelers had consistently paid this claim leading up to the negotiations under the suit limitation period travelers had told the public adjuster in the weeks before the two-year anniversary that it was considering the siding replacement claim. It was considering the claim that correspondence is crystal clear that travelers was paying this was paying for the roses to the other three sides travelers agreed to consider that claim and it was still paying for the north-facing sides at the time of the suit limitation period and so travelers is considering the claim that is in accordance with the Continental case where the adjuster there said well we're considering the claim built files where the adjuster there essentially said let's Mr. Byers is Legend Creek's position that the request to replace all sidings was a new claim or part of the existing claim? It's it's clearly part of the existing claim and this happens quite frequently. I've heard you say both just in the last few minutes. I've heard you use the word new. I'm sorry it would be it would be what I consider a supplement to the original claim so these are the same buildings but because of the initial repair it's very often happens that repairs will start and an issue will arise and the scope of work will increase and that's exactly what happened here. The difficulty with this is well if the adjuster just would have gone out and looked at the siding and had a 40 to approve it there was still three weeks before the before the but the impression was given by the adjuster that the suit limitation would not be enforced by not directly answering questions about the two-year anniversary period. The evidence was unequivocal that travelers never the travelers adjuster never respond to inquiries from the public adjuster as to the effect that the two-year anniversary period would have on replacement cost benefits. And that's all that we're seeking is replacement cost benefits for the other three remaining sides to these affected buildings. Mister Byers if my math is correct the various payments that were made add up to about $950,000 is that correct? Yes judge. And then the payment on which the check was stopped stop payment was about $257,000 is that right? Yes judge the penalty the penalty in this case is severe there's almost $300,000 that travelers agreed post two-year anniversary deadline that it was owed travelers appraiser agreed to that which shows that the public adjuster really was not jimmying up a case or anything of that nature. This money was owed the entire time. In what Indiana law says in those circumstances as well travelers if you want to enforce the strict limitation period just let the insured know there's no reason not to. The facts of this matter show that on the inducement side of it that the policyholder had at the time at the two-year anniversary date still was owed $44,000 by travelers for work the contractor already did. So there's a great power differential here in that if the policyholder is not going to play ball and continue to cooperate with travelers while travelers is asking for cooperation well maybe travelers would just cancel that $44,000 payment and the homeowners association will be stuck with the bill. With that your honors I'll reserve the balance of my time for rebuttal. Very good Mr. Byers one brief question you mentioned four areas delay negotiations inducement what was the fourth? Well it was strict compliance with the policy to address your question judge very briefly travelers way the travelers position as well it strictly it enforced strict compliance the entire time so the policyholder never should have thought that well there's an impression that it might waive it in this one circumstance. That's not the case at all. Thank you. You'll reserve the rest of your time for rebuttal we're now going to move to counsel for the appellee Mr. Orlando. Thank you your honor may it please the court Tom Orlando for appellee. I want to start with a comment that counsel made towards the end of this presentation that in the Indiana law stands for the proposition that if you're going to enforce just let the insured know and that is not the law of Indiana. The cases are clear that there is not a duty to let the insured know that the insurance company intends to stand on this suit limitation provision what the courts have done is they've looked at it as a waiver concept did the insurance company waive reliance on the suit limitation provision and where in a couple of cases where those factors have been found to exist the court said in those cases because there were factors or elements of waiver the insurance company should have let the insured know that it was going to stand on the suit limitation defense but in this case those factors do not exist. The issue of negotiations and the cases that talk about this the couple of cases that have found for waiver in the context of negotiations and one is the Continental case which counsel just mentioned in Continental the insured threatened to file suit and told the insurance company we're going to sue in 10 days if we don't get some action on this and the insurance company said well we'll take a look at it that's the context in which the court found a waiver there was an actual threatened suit and the insurance company said well don't do that let's we'll we'll talk about it and then the time elapsed and the court said in that case that there is a waiver there never was any kind of negotiation of that kind in this case from the get-go what the insured did here is make a claim for loss to the roofs and the gutters and the soft metals and to the north facing elevations travelers investigated the claim there wasn't a negotiation travelers determined that it was damaged and made an estimate and paid off those estimates initially travelers said we think we can repair those nor the north elevations can be repaired and we're only going to pay for spot repairs the insured came back legends Creek came back at some point and said well we'd like you to reconsider that because we think that they can't be spot repaired and and there's so much damage to the north elevations they should be fully replaced that's what travelers then did it investigated that claim it looked at it it made it it made a determination it agreed that it would replace those elevations but that wasn't a negotiation that was because travelers investigated the claim and made its own determination that yes those north elevations should be replaced that wasn't the result of a negotiation that was a result of travelers doing its job of investigating a claim and that brought up it clarifies this make sure we're talking about when you're talking about it an elevation that we're like a wall yeah so if we're looking at the building is having four sides and we're talking about the siding on each of the four walls so I got listed as a north face siding and then the part of the issue was the north face siding repair for some reason didn't match the other three sightings was that an issue well that so that's the claim that legends Creek made travelers in April of 2018 a few weeks before the expiration of the suit limitation provision so prior to April legends Creek actually went out and replaced the north the siding on the north walls and then looked at it apparently and said they don't now they don't match the three other sides so travelers we want you to replace the three other sides now mind you there was no storm damage to those three other sides so this was a matching issue so in April of 2018 for the first time legends Creek asked travelers to pay for the travelers said we'll look at it travelers did the same thing it had always done throughout the history of the claim which was to investigate and look at and research and make a determination on what legends Creek had asked it to do there was no negotiations ongoing at that time that's very clear from the record in the emails mr. let me ask you the same question I asked mr. Byer the inverse is that request to replace all sightings from travelers perspective a new claim or an extension of the initial claim well I think it's a little bit semantics I think I would say it's a new claim clearly it all stems from the May 1 2016 loss and then in the history of that loss the insured made a claim and then supplemented that claim and then supplemented the claim so whether we called it a supplemental claim or a new claim it all stems from the first loss and I don't think it's relevant to the outcome of this well it leads me to your point about negotiations if it's all if you say semantics so you really could consider it all a part of the same claim why weren't the initial negotiations really part and parcel of the new negotiations that that legends Creek opened up so to speak well again I mean I would say there never really were negotiations on any part of any claim made as a result of this loss there were never were settlement negotiations it was travelers investigating providing an estimate saying this is what we think we owe under the policy the insured in many cases agreeing with that and then and ultimately agreeing with it and then coming back and say oh by the way now we want you to look at this and this here is the three other elevations which they for for the first time in April of 2018 when internally they knew at least in February of 2018 but they were going to ask travelers to pay for this but they didn't but they didn't see fit to let travelers know about that until after travelers had already agreed to pay for the north elevation that there were apparently there wasn't any damage to the other three sides that's correct with the new with the north siding replaced resurfaced or whatever they did now doesn't match the other three sides is that the problem that they're at least one of them that they're complaining about well that that's their claim is that it didn't match and then the question is well what do you do about that does that require replacing the siding can that can the siding be painted can you paint that that's what travelers have decided back by the end of 2017 or early 2018 is that we would paint the north elevations to match the three other sides that had been agreed to so what happened though was the legends Creek took the opportunity of the fact that the the new side did not match the other three sides to ask travelers to replace the other three sides they made that request on April 13 2018 travelers said we will take a look at it replace that's different than painting isn't it that's right so initially traveler so travelers agreed to replace the north side the north sides on the buildings and travelers at the time said after replacing new siding on those sides if there is a mismatch with the the three other sides that are not being replaced the north side the new side that can be painted that's what travelers was going to do but in April of 2018 legends Creek came to travelers and said instead of painting the new side that's just been replaced we want you to pay for all three new sides so that all four sides of the building have new brand new siding that's what the insured wanted and Travers said we'll look at it that's all Travers said there was no negotiation there was nothing that Travers said or did that would have led the insured to believe that it would not enforce any of the deadlines in fact as council pointed out at that very time legends Creek asked travelers to extend the time for the replacement cost benefit so why was why was legends Creek asking for the extension of a deadline if legends Creek believed that travelers would not enforce a deadline I mean the facts of this case demonstrate that legends Creek understood that travelers would enforce the deadlines council says that while travelers agreed to its requests throughout the process well travelers should just acquiesce and not do anything travelers agreed to these various claims after it did its work after it's did its investigation travelers required the insured to prove up each element of its claim as it was presented during this two-year history travelers never blindly accepted anything that the insured presented there simply is no evidence no activity no conduct during the two years of the claim where travelers did not enforce or apply the provisions of its policy there is no fact that would give rise to a reasonable expectation by the insured that travelers would not enforce this that's just simply critical so there weren't negotiations the delay argument that council was raised I mean that really wasn't raised in the brief and like judge Brennan I'm not sure I follow how how any purported delay by travelers of but you know the the length of time that travelers took to investigate the various components of these claim submissions would cause the insured to believe that it would not enforce deadline I don't understand that connection and that argument was not made in Greece council mentioned inducement and I don't know what the inducement is there was no inducement the insured made this claim at the 11th hour and travelers said we would look at it that's what travelers always did during the course of the history was to look at the claims that didn't mean that when the clock ran out that that would not be enforced there's no evidence of an inducement there to simply tell the insured we acknowledge receipt of this and we're going to look at it that's not inducement the factors are just not there for the reliance. Mr. Orlando on the on the second argument or second issue concerning the validity of the appraisal award and the post judgment motions Dungeons Creek offers an argument that travelers submitted to the appraisal process as travelers could have declined to sign the appraisal award but decided to do so what is your response to that? Well so it was the appraiser who signed the appraisal award so let's let's take a step back the court ordered the parties to go to appraisal over travelers objections so travelers was an involuntary participant but travelers abided by the court's order and so court the travelers went to the appraisal and it sent its appraiser to appraise this with Legends Creek's appraiser and those two appraisers agreed on this amount of loss so the appraisers aren't looking at suit limitation provisions or any of the other defenses or issues that are involved in the case they're just looking at what does it cost to fix or what are we going to do with this property and those two appraisers reached an agreement on the amount and travelers appraiser signed that award again the court had ordered the appraisal to take place and so then travelers finds out that there there is an agreement with the appraisers the court hasn't ruled on the summary judgment motion yet so travelers was in really in a pickle but travelers went ahead and issued the payment under a reservation of rights it issued that check and specifically reserved the right and said we reserve our right to get this money back if the court later rules that this whole thing is time barred and that's exactly what happened the district court ruled that it was time barred so mr. Orlando so I just get the sequence correct the appraisal order comes from the magistrate is that correct correct and at that time the summary judgment motion is pending before judge Pratt is that correct correct so is it the case that the the possibility exists of the suit limitation provision being enforced by the court but at the same time the appraisal process is on a different track in front of the magistrate that's correct so the the motion for summary judgment motions for summary judgment had been fully briefed the magistrate judge ordered the parties to go to appraisal travelers appealed that ruling to the district court and and then the parties proceeded to appraisal because they were ordered to do so the district court then ruled on at a much later time ruled on the the fully brief motions for summary judgment and the objection to the magistrate's ruling all at a later time which was after the appraisal had taken place an award was entered so clearing up that sequence so there was no waiver by travelers the fact that that the appraiser signed this award is not doesn't mean anything in terms of of the issue the parties were ordered to go through this process and that that's what they did I use the example in the brief of if you go to it had this gone to a trial on this issue of both the suit limitation and the and the final award and the jury came back and said well we you know we award the insured x dollars but then on a post judgment motion of travelers the court said well you know what there wasn't waiver and I'm going to grant judgment in favor of travelers on their post judgment motion the fact that the jury had entered a dollar award would not mean anything because judgment would be entered in favor of travelers and that's what happened here the parties were ordered the appraisal they went through that process but once the court determined that the suit was not timely and the legal action because that appraisal only took place by virtue of the court's order and as it turns out the whole legal proceeding was time barred the appraisal award must be vacated if the court affirms the district court on the suit limitation provision issue then the appraisal award must be vacated to I see that I'm out of time so thank you Mr. Orlando Mr. Byers we're to go back to you now for rebuttal argument thank you your honor one thing that I would like to address is the issue of reliance was brought up reliance is if you look at the Schaefer case reliance is really not a factor anymore under Indiana law in this analysis the fact of the matter is that most policyholders don't know whether this limitation is in their policy or not additionally the cases that have looked at this a few of them were represented by attorneys and so Legends Creek should not be faulted for having a public adjuster the issue of reliance when you look at the Schaefer case it's not a factor waiver is determined by the insurance company's actions alone and slight acts can can develop into a waiver in terms of inducement what the what the correspondence shows in the three weeks prior to the anniversary date is really simply that this was a supplemental claim it was to the same buildings there's no dispute in the insurance world that this was treated as a supplemental claim it was to the same buildings they had the same claim number there were if it was a new claim a new deductible would have been charged I assure you by the insurance company and no new deductible was ever charged so in looking at addressing this issue in the three weeks prior to the anniversary date the travelers adjuster says that they're going to consider the claim and they're considering it well those are negotiations how can think about the rule of law that would be developed by this court if up until the two-year anniversary there were still amounts owed and the insurance company just said well we're going to consider it we're going to consider it we're going to that would be a terrible rule of law and I think it would set Indiana insurance law back before the Huff case. Mr. Byer, how then do you respond to travelers when traveler says well Legends Creek knew how to ask for an extension and the deposition testimony does show it explicitly asked for an extension with regard to replacement costs so this other issue so when it's three weeks before the the the suit limitation deadline Legends Creek does not ask for an extension given this supplemental claim for replacement of all the siding what's what's your response? Well the response to that is that Indiana law does not put the onus on the policyholder to ask for an extension under these circumstances the onus is on the insurance company and the Schaefer case is clear on this that when negotiations are ongoing the onus is on insurance company to crystal clearly identify that it's going to enforce strict compliance and that's really all we're talking about here is strict compliance the policyholder filed suit within 60 days after the actual denial travelers never denied this supplemental part of the claim until the two-year anniversary period had run and it never issued a written denial anywhere at any point in time in this case this two years anniversary suit limitation did not come up until the lawyers reviewed it once it was in litigation and I think that that shows an intent to waive on travelers part that's definitely an issue for the jury to consider after the two-year anniversary deadline there's a plethora of correspondence a plethora of correspondence going back and forth in which travelers adjuster never mentioned the two-year deadline he frankly didn't care about it yeah so legends Creek never gets an answer to its request for a deadline right an extension never never does but it does it does receive an answer in practice because supplemental payments so this is waiver by conduct supplemental payments by travelers were issued through June so at the time of the two-year deadline there's a request for extension of talking about right that's all the policyholder wants out of this lawsuit is full replacement cost benefits but there's an extent there's a still paying the claim through June so while no direct answer was given travelers by its conduct it gave the impression of waiver by paying through June which was after the anniversary deadline and never mentioned any sort of deadline for the cases are pretty clear on this well I'll strike that the Unfair Claim Settlement Practices Act there's several violations of the Unfair Claim Settlement Practices Act in the claims handling part on travelers travelers also never required a proof of loss so when you're looking at strict compliance and the impression of whether they're going to give strict compliance it never required a formal proof of loss and it issued payments more than 30 days later even though it's policy says you have to pay within 30 days the Unfair Claim Settlement Practices Act plainly requires prompt responses with that I thank you mr. Byers thank you just appreciate your argument thank you mr. Orlando we appreciate your argument any further questions I don't think so I think I hope I understand it all the day and I don't really have anything more does Jackson the QB any further questions no thank you thank you to both counsel the case will be taken under advisement thank you